**In re BIO–MED LABORATORIES, Debtor.**

**Bankruptcy No. B89–5310.**

United States Bankruptcy Court, N.D. Ohio, E.D.

Aug. 20, 1991.

James Reed, Cleveland, Ohio, for debtor.

Joel Rathbone, Cleveland, Ohio, Trustee.

David Simon, Cleveland, Ohio, for Gateway Plaza Ltd. Partnership.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

### I.

The trustee filed a motion to deny an administrative expense claim of Gateway Plaza Limited Partnership (Gateway) for reasonable use and occupancy of certain leased premises used by Bio–Med Laboratories (Debtor). Specifically, the trustee contends that the landlord, Gateway, should not be awarded any rental claim for use and occupancy of property contaminated with hazardous waste which the Environmental Protection Agency (EPA) required disposal. Contrarily, Gateway contends that the trustee used and occupied the property as required by law, to the exclusion of Gateway, and Gateway is therefore entitled to an administrative expense claim in accordance with 11 U.S.C. § 503(b).

### II.

On December 28, 1989 Bio–Med Laboratories (Debtor) filed a voluntary Chapter 11 which was subsequently converted to the present Chapter 7 case on December 11, 1990. Gateway was the landlord of the

Debtor. After the conversion, the trustee failed to accept or reject the executory lease within the sixty (60) day period mandated by statute. Therefore, the lease was deemed rejected. 11 U.S.C. § 365(d)(4). The trustee discovered hazardous waste on the property which the EPA required disposal of in compliance with state and federal laws. The trustee occupied the property from December 28, 1991 until the disposal was completed on May 24, 1991. It is unclear whether this disposal of the waste occurred during this entire period, but it is undisputed that the Debtor occupied the leased premises during the entire period. The trustee seeks to have the Court deny Gateway an administrative claim for use and occupancy of the property for this five-month postpetition period since the trustee possessed the property for the sole purpose of disposing of the hazardous material.

## III.

The dispositive issue is whether the estate of a Chapter 7 business debtor which occupies leased premises as a holdover tenant solely for the purpose of complying with an EPA clean-up order is subject to an administrative expense claim filed by the lessor for the period the premises were so occupied?

## IV.

■■■ An unexpired lease that is not assumed or rejected by the Trustee is deemed rejected sixty (60) days after the order for relief issues. 11 U.S.C. § 365(d)(4). It is well settled law that a trustee has an obligation to pay full rent during that sixty-day period. In *Matter of Longua*, 58 B.R. 503 (Bankr.W.D.Wis. 1986). Further, § 365(d)(4) requires that upon automatic rejection of the lease at the end of the sixty-day period, "The trustee shall immediately surrender such nonresidential property to the lessor." Failure to surrender the property amounts to the trustee becoming a holdover tenant. *In re Rare Coin Galleries of America, Inc.*, 72 B.R. 415 (D.Mass.1987). A landlord is entitled to recover fair rental value of leased property during the holdover term which is determined either on a full rental value or debtor's actual use, since the debtor enjoyed actual use and possession of the leased premises during the relevant time period. *In re Gillis*, 92 B.R. 461 (Bankr.D.Hawaii 1988); *In re Rare Coin Galleries of America, Inc.*, supra, p. 417. The majority of cases hold that there is a presumption that the reasonable value for the use of the premises is the rent under the lease unless an opposing party produces evidence that the lease rate is unreasonable. *In re Coin Galleries of America*, supra, p. 417. Furthermore, holdover period rent constitutes a priority administrative expense even where there are insufficient funds to pay all other priority claimants. *Matter of Longua*, supra, p. 506; *In re Gillis*, supra, p. 470; contra, *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969 (Bankr.E.D.Pa.1987) (claim pursuant to § 365(d)(3) does not constitute super priority expense, but rather it is entitled to payment *pro rata* with all other allowed Chapter 11 administrative claims).

Considering the language of 11 U.S.C. § 365(d)(4) which generally requires the trustee to immediately surrender nonresidential real property upon the expiration of the sixty-day period, the U.S. Supreme Court has taken a different view when property is contaminated with hazardous wastes. Specifically, the Court in *Midlantic National Bank v. New Jersey, D.E.P.*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) held that a bankruptcy trustee is not empowered under 11 U.S.C. § 554(a) to abandon toxic wastes in contravention of state environmental protection laws.

Some courts have held that if the landlord actually cleans up the toxic wastes of the debtor on the leased property then the landlord is not entitled to an administrative priority for the cost of the clean-up. *In re Dant & Russell*, 853 F.2d 700 (9th Cir. 1988); *Matter of Synfax Mfg., Inc.*, 126 B.R. 30 (Bankr.D.N.J.1990). If, however, the landlord does not dispose of the hazardous waste on the property, the United States government has an administrative claim against the debtor's estate. *In re Wall Tube & Metal Prod. Co.*, 831 F.2d 118, (6th Cir.1987). The Sixth Circuit in

*Wall Tube* reversed the Bankruptcy Court's holding which held that the state's clean-up expense was not an administrative claim entitled to priority since the clean-up activity neither benefitted the estate nor fulfilled a legal obligation. *Id.*, at 121. The Sixth Circuit based its reversal on the same rationale articulated in *In re T.P. Long Chemical*, 45 B.R. 278 (Bankr. N.D.Ohio 1985) which concluded that "since the estate cannot avoid the liability imposed by CERCLA (Comprehensive, Environmental Response, Comprehension, & Liability Act), it follows that the cost incurred ... in discharging this liability is an actual, necessary cost of preserving the estate entitled to administrative priority." The Sixth Circuit further held in *Wall Tube* that when dealing with environmental hazards on the estate's property it is irrelevant whether the trustee is liquidating, managing or reorganizing since his efforts under the Code are the same—the consolidation and distribution of the estate's assets to the benefit of the creditors.

 The present matter does not concern which party will bear the costs of the hazardous clean-up. It does, however, address the issue of whether the estate has received a benefit by remaining on the leased premises beyond the lease period in order to remove the hazardous waste. Section 503(b), in pertinent part, provides:

§ 503(b). Allowance of administrative expenses.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under Section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case. 11 U.S.C. 503(b)(1)(A).

Section 503(b) makes no effort to provide an exclusive listing of the types of claims which will be accorded administrative expense priority. Postpetition rental payments, however, are usually allowed as administrative expense claims where a bene-

fit was bestowed upon the debtor's estate. The preservation of a debtor's estate is clearly a benefit to the estate. The cost of that preservation is, likewise, in the interest of every creditor and is a necessary expense of administration under the Code. It is unquestioned that Gateway's allowing the Debtor to remain on the premises in a holdover status effectively preserved the estate. This holdover status occurred postpetition. While the Debtor occupied the premises postpetition, and beyond the lease period, Gateway was precluded from making further disposition of the same premises. The Debtor's occupancy was beneficial to the estate, as the estate was preserved during the subject period.

## V.

 The determination of when administrative expenses are to be paid is within the discretion of the trial court. *In re Verco Industries*, 20 B.R. 664 (9th Cir. BAP 1982), *citing* 11 U.S.C. § 503(b). In view of the aforementioned authorities, the trustee is obligated to pay full monthly rental rate to the lessor (Gateway) from the date of the conversion, December 11, 1990 until the sixty-day period expired. 11 U.S.C. § 365(d). After the sixty-day period expired, the trustee was obligated to surrender the property. 11 U.S.C. § 365(d)(4). Since the property was contaminated by the hazardous wastes attributed to the Debtor, the trustee was precluded from abandoning the property. *See, Midlantic, supra.* The debtor is, undisputedly, a holdover tenant. As such, the Debtor's estate is obligated to pay the required rental value. There is a rebuttable presumption that the amount of the rent payable is that amount specified in the lease. Since this presumption has not been rebutted by the trustee the lease amount controls. At a monthly rate of $5,000.00, the amount of rent owed Gateway for the period of five (5) months is $25,000.00. This monthly rental value for the holdover period is an administrative claim which is entitled to priority status.

**76**

Accordingly, the lessor is entitled to an administrative claim for rent in the amount of $25,000.00.

IT IS SO ORDERED.