**In re GEONEX CORPORATION**

**and**

**Vernon Graphics, Inc., Debtors.**

**No. 95–5–1368–JS.**

United States Bankruptcy Court, D. Maryland.

Jan. 18, 2001.

Nathan B. Feinstein, Daniel J. Carrigan, Piper, Marbury, Rudnick & Wolf, Washington, D.C., for the Reorganized Debtors.

Gary Philip Nelson, McClure & Watkins, P.C., Pittsburgh, Pennsylvania, Richard M. Goldberg, Shapiro & Olander, Baltimore, Maryland, for Norritech.

Karen H. Moore, Baltimore, Maryland, Assistant U.S. Trustee.

### MEMORANDUM OPINION OVERRULING OBJECTION OF THE DEBTORS TO THE ADMINISTRATIVE CLAIM OF NORRITECH, INCLUDING INTEREST AND COUNSEL FEES

JAMES F. SCHNEIDER, Bankruptcy Judge.

The issue presented is whether the administrative claim of Norritech for postpetition, prerejection damages arising from the rejection of its unexpired lease of nonresidential real property includes interest and counsel fees. According to the provisions of the lease and applicable law, this opinion holds that it does.

### FINDINGS OF FACT

On February 27, 1997, the debtors, Geonex Corporation and Vernon Graphics, Inc., filed voluntary Chapter 11 bankruptcy petitions in this Court. By order [P. 15] entered on March 9, 1995, the cases were ordered to be jointly administered. This Court ordered the appointment of a Chapter 11 trustee to administer both cases, by order [P. 51] entered on April 24, 1995. On the same day, Geonex moved to extend the time to assume or reject executory contract and unexpired leases [P. 53]. On April 28, 1995, Geonex filed an amended motion to extend the time to assume or reject executory contracts and unexpired leases. The amended motion was granted by order [P. 74] entered on May 26, 1995. Meanwhile, on May 1, 1995, the U.S. Trustee appointed Lawrence D. Coppel, Esquire, as Chapter 11 trustee in both cases. The extension granted by this Court expired on June 30, 1995, without the Chapter 11 trustee exercising his option of assuming or rejecting the lease or requesting a further extension of time from the Court to do so.

On May 30, 1995, Norritech, the debtors' former landlord, filed identical proofs of claim in the Vernon Graphics case (Claim No. 9) and in the Geonex case (Claim No. 66) as administrative priority claims in the

amount of $91,314, based upon rent due in the amount of $30,438 per month for the months of March, April and May, 1995, assuming a rejection as of June 1, 1995. "The administrative claim will go up if the rejection takes place as of a later date." Each claim stated that it was filed pursuant to 11 U.S.C. § 365(c)(3), which provides:

(c) The trustee may not assume or assign an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(3) such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief[.]

*Id.* However, Norritech argued at a hearing held before this Court on June 4, 1996, that the lease in question was *not* terminated prepetition, as the debtors alleged in their objection to the administrative claim.[1] For their part, the debtors had listed the lease with Norritech as an unexpired lease of nonresidential real property.

On September 30, 1993, more than one year prior to the filing of their bankruptcy petitions on February 27, 1995, the debtors vacated the leased premises identified as 30 South Montgomery Avenue, West Norriton Township, Norristown, Pennsylvania. From September 29, 1993, until December 33, 1994, the parties were engaged in civil litigation brought by Norritech in the U.S. District Court for the Western District of Pennsylvania for damages for the debtors' breach of lease and breach of contract. The suit was dismissed by the court after the parties entered into a settlement agreement. The debtors filed the instant bankruptcy cases on the day before the settlement agreement was to have been performed. This Court sustained the debtors' objection to Norritech's claim for damages for the trustee's failure to pay postpetition rent, as required by 11 U.S.C. § 365(d)(3) (2000), determining the lease

upon which the claim was based to have been terminated prepetition. Order [P. 387] entered June 12, 1996.

On appeal, the U.S. District Court for the District of Maryland (Blake, D.J.) reversed, holding that under Pennsylvania law, and in light of the debtors' having scheduled it as an executory contract, the lease was breached prepetition, but was not terminated, so that it continued to exist as an executory contract or unexpired lease after the filing of the bankruptcy petition. Accordingly, the District Court held that, as lessor under an unexpired lease of nonresidential real property in full force and effect on and after the petition date, and not rejected until June 29, 1995, Norritech was entitled to administrative rent, overruled the debtors' objections and remanded the case to determine Norritech's entitlement to late charges for unpaid rent, interest and counsel fees. *Norritech v. Geonex Corp.*, 204 B.R. 684 (D.Md.1997). In an unpublished *per curiam* opinion, the Fourth Circuit affirmed. *Geonex Corp. v. Norritech (In re Geonex)*, Unpublished opinion, No. 97–1225, 1997 WL 471105 (4th Cir.(Md.)), August 19, 1997.

The issues now before this Court on remand are: "Was Norritech's administrative claim for rent fixed as of June 30, 1995, the date the lease was rejected, or did interest and counsel fees continue to accrue; and if so, what amount of counsel fees and interest are allowable?" The sum of counsel fees and expenses claimed by Norritech from March 1, 1996, through June 8, 2000, totaled $43,817.79, plus 10% of Norritech's administrative claim. Its claim for interest on postpetition, prerejection rent and late charges covering the period from March 1, 1995, through June 30, 1995, calculated at the rate of 6% per annum, totaled $43,415.43, as of October 31, 2000. The parties are in agreement that Norritech is entitled to an administrative rent claim at least in the amount of

---

1. Perhaps the claimant meant to cite 11 U.S.C. § 365*(d)*(3).

$128,623.62, representing rent due from the petition date to June 30, 1995, including late charges in the amount of $4,696.22. Norritech's claim for interest and counsel fees as part of its administrative rent claim is based upon the terms of its lease and the applicable law of the State of Pennsylvania. The debtors disputed this and argued the agreed late charges are Norritech's only remedy under the terms of its lease and the provisions of the Bankruptcy Code.

## CONCLUSIONS OF LAW

 Rejection of executory contracts and unexpired leases in bankruptcy is governed by Section 365(d)(3) and (d)(4) of the Bankruptcy Code.[2] The trustee is required to pay rent to a lessor under an unexpired, prepetition lease of nonresidential real property from the date of the filing of the petition until the lease is rejected and the failure to do so gives rise to an administrative claim. *In re Virginia Packaging Supply Co.*, 122 B.R. 491 (Bankr.E.D.Va.1990); *In re M.H.I., Inc.*, 61 B.R. 69 (Bankr.D.Md.1986). This requirement exists regardless of whether the debtor actually occupied the leased premises during the postpetition, prerejection period. *In re Cardian Mortgage Corp.*, 127 B.R. 14 (Bankr.E.D.Va.1991); *In re M.H.I., Inc.*, 61 B.R. 69 (Bankr.D.Md. 1986). Therefore, the administrative rent claim allowable to a landlord in these circumstances is not based upon any benefit conferred on the estate, but rather the protection of the landlord by requiring the estate to pay the cost of taking its time to decide whether to assume or reject unexpired leases. In affirming Judge Blake, in *Norritech v. Geonex Corp. (In re Geonex)*, 120 F.3d 261 (4th Cir.1997), the Fourth Circuit expressed its approval of the majority view. *See In re Pacific–Atlantic Trading Co.*, 27 F.3d 401 (9th Cir.1994) (trustee must pay rent, as an administrative expense, during the postpetition/prerejection period); *Paul Harris Stores, Inc. v. Mabel L. Salter Realty Trust*, 148 B.R. 307 (S.D.Ind.1992); *In re Potomac Systems Engineering, Inc.*, 208 B.R. 561 (Bankr.N.D.Ala.1997); *In re Liberty Outdoors, Inc.*, 205 B.R. 414 (Bankr.E.D.Mo. 1997) (landlord is entitled to recover rent as an administrative expense); *In re C.A.F. Bindery, Inc.*, 199 B.R. 828 (Bankr. S.D.N.Y.1996); *Cardian Mortgage Corp.*, 127 B.R. 14, cited in Nancy Ann Connery, *Negotiating Commercial Leases: How Owners and Corporate Occupants Can Avoid Costly Errors*, Current Issues: Impact of Bankruptcy on Commercial Leases, 458 PLI/Real 723 (May 2000), n. 12.

According to the decision of Judge Blake which the Fourth Circuit affirmed, Norritech is entitled to an administrative claim for postpetition rent due for the period from the filing of the petition on February 27, 1995, until June 29, 1995, when the last extension granted by this Court expired without the trustee having assumed the

---

**2.** 11 U.S.C. § 365(d)(3) (2000) provides:

The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

11 U.S.C. § 365(d)(4) (2000) provides:

Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor. *Id.*

# 340

lease.[3] As indicated, the parties have stipulated that the amount of rent due for the period in question is $128,623.62, including late charges.

## COUNSEL FEES

■ Norritech is entitled to the full amount of rent due under the lease only for the period from the filing until rejection, pursuant to Section 365(d)(3), but it is also entitled under applicable state law and the terms of the lease to the reimbursement of all of the counsel fees it was required to expend to enforce its right to payment of rent, from the petition date down to the present. *See Three Sisters Partners LLC v. Harden (In re Shangra–La, Inc.)*, 167 F.3d 843 (4th Cir.1999), where the Fourth Circuit held that as a condition of the assumption of an unex-

pired lease, a trustee must assume all obligations of the defaulting debtor under the lease, including the payment of the lessor's counsel fees that were expended to collect unpaid rent.

In the instant case, the terms of the lease in this regard are broad enough to encompass the counsel fees requested. The lease obligated the debtors to "pay and indemnify [Norritech] against all legal costs and charges, including attorney's fees, ... lawfully and reasonably incurred in obtaining possession of the Leased Premises after default of [the debtors] or upon expiration or earlier termination of the term of this Lease or in enforcing any covenant or agreement of [the debtors]...."[4] Lease Agreement, dated August 3, 1987. Norritech has never attempted to obtain possession of

---

**3.** While the instant case was pending but before this Court rendered its decision at the hearing on June 4, 1996, as memorialized in its order of June 12, 1996, the U.S. District Court for the District of Maryland (Smalkin, D.J.), issued its opinion on March 28, 1996, in the case of *DeBartolo Properties Management, Inc. v. Devan (In re Merry-Go-Round Enterprises, Inc.)*, 194 B.R. 46 (D.Md.1996), holding that a debtor's failure to obtain an executed order of the bankruptcy court extending the time to assume or reject unexpired leases and unexpired leases within the original 60-day period authorized by Section 365 of the Bankruptcy Code deprived a debtor of the power to exercise the option of assumption or rejection.

None of the parties raised *DeBartolo* as an issue, even though the decision had been rendered while the debtors' objections to Norritech's administrative claim was pending before this Court. In holding that the trustee's postpetition rejection of the lease gave rise to an administrative claim for unpaid postpetition rent due on the date of the rejection of the lease, neither the District Court nor the Fourth Circuit took *DeBartolo* into account. If *DeBartolo* were applicable here, the lease in question would be held to have been rejected by operation of law on April 29, 1995, the sixty-first day after the petitions were filed. By that date, this Court had not yet executed an order extending the time for the debtors to assume or reject executory contracts and unexpired leases. Under this scenario, the Chapter 11 trustee, who was not even appointed until May 1, 1995, had no option to

assume or reject the lease because it was already rejected by operation of law. After April 28, 1995, the sixtieth day after the filing of the bankruptcy petitions, the bankruptcy court had no authority to grant a further extension, thereby rendering void the order [P. 74] entered on May 26, 1995.

*DeBartolo* will not be held applicable here because to do so would not only be inequitable but would run counter to the law of the case as determined by two appellate opinions. Extensions of time to assume or reject unexpired leases were sought by the parties in good faith and granted by this Court with the understanding under existing law that such extensions were proper and effectual.

**4.** The Lease further provided:

[I]f the lessee defaults in the payment of Base Rental ... or any other covenants and agreements of Lessee set forth in this Lease, and such default continues for a period of fifteen (15) days after written notice of such default, or if the Leased premises shall be deserted or vacated for a period of ten (10) days, the entire amount of rent then remaining unpaid under this Lease and any damages due to Lessee's default or desertion or vacation shall, at Lessor's option, become due and payable, or, at Lessor's option, this Lease may be forthwith forfeited and terminated and Lessor may enter and take possession of the Leased Premises, in which event Lessor may relet the Leased Premises to such tenants as Lessor may deem suitable, and Lessee agrees to indemnify Lessor for any loss occurring by reason thereof.

the leasehold from the debtors because it did not need to, having been in possession since before the filing of the petition when the debtors abandoned the premises. Just as the District Court determined that the lease was not terminated prepetition, it is equally clear that it was not even terminated postpetition when it was rejected. *See* 3 *Collier on Bankruptcy* ¶ 365.09[3] (1999), *citing Eastover Bank for Sav. v. Sowashee Venture (In re Austin Dev. Co.)*, 19 F.3d 1077 (5th Cir. 1994); *In re Tri–Glied, Ltd.*, 179 B.R. 1014 (Bankr.E.D.N.Y.1995); *In re Emple Knitting Mills, Inc.*, 123 B.R. 688 (Bankr. D.Me.1991); Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding "Rejection,"* 59 U.Colo.L.Rev. 845 (1988). According to both the District Court and the Fourth Circuit, after the filing of the bankruptcy petitions, Norritech, as it was entitled to do, continued to demand rent and complain that it was not receiving it. In January, 1998, the lease expired, but the debtor's obligation to pay the landlord's counsel fees continued after the lease was terminated, and, accordingly, the fees continued to accrue. They include the representation of Norritech through the claims process, including the two appeals to obtain the reversal of this Court's order and additional expense after remand, including the preparation of briefs and appearance at a hearing.

This Court has meticulously examined the time records of Norritech's counsel, Gary Philip Nelson, his firm and others, and has determined that the fees and expenses charged were reasonable under all the circumstances of this case. Unfortunately, the total amount of fees, when separated out from the time records submitted by counsel that combined fees and expenses, does not add up to the total requested. The total amount sought by Mr. Nelson and others totaled $43,817.79. When this Court took a calculator and examined the time sheets, it was discovered that all the charges listed added up to only $33,697.58. This Court is unable to determine the cause of the discrepancy. Unless some further explanation is provided, that is the figure that will be allowed as counsel fees and expenses, subject to any supplemental charges that may be allowed.

■ Counsel fees are allowed to the landlord in connection with its administrative rent claim if authorized by the terms of the lease. *In re Entertainment, Inc.*, 223 B.R. 141 (Bankr.N.D.Ill.1998); *In re Exchange Resources, Inc.*, 214 B.R. 366 (D.Minn.3rd Div.1997); *In re Narragansett Clothing Co.*, 119 B.R. 388 (Bankr. D.R.I.1990) (counsel fees and interest were allowed in light of the trustee's disobedience of court orders in failing to tender postpetition, prerejection rent and the recovery of counsel fees and interest were provided for in the lease.), *aff'd* 210 B.R. 493 (1st Cir. BAP 1997); *In re MS Freight Distribution, Inc.*, 172 B.R. 976 (Bankr. W.D.Wash.1994) (recovery of interest, late fees and attorneys' fees provided for in lease.).

This Court is in agreement with the opinion in the case of *In re Exchange Resources, Inc.*, 214 B.R. 366 (Bankr. D.Minn.1997), which held that counsel fees were recoverable as part of the landlord's rent claim that were incurred to collect rent where the lease called for reimbursement of fees as rent. The rationale of *Exchange Resources* is that Congress intended to protect landlords and to place them in the same position in bankruptcy as they would be outside with respect to the enforcement of their rights under their leases. The well-reasoned opinion quoted another case involving a lease of personal property to support its conclusions:

The legislative history to § 365(d)(3) makes it clear that Congress intended a landlord to be fully paid during the first 60 days of the case while the Trustee or debtor in possession preserves the right to assume the lease. The language of the statute itself is consistent with this intent. There are only three exceptions

to the requirement that the trustee perform all obligations under the lease, those exceptions set forth in § 365(b)(2), which are not applicable here. This Court therefore concludes that "all obligations" means just that. To the extent the Lease at issue here requires the payment of ... attorneys fees and costs, [the lessor] may recover those amounts. [*In re MS Freight Distribution, Inc.*, 172 B.R. 976, 978–979 (Bankr. W.D.Wash.1994)] (footnote omitted). Under this rationale as long as the underlying lease gives a landlord the right to recover its attorney fees upon breach by a tenant-debtor, *In re Health Science Products, Inc.*, 191 B.R. 895, 913 (Bankr. N.D.Ala.1995), the landlord can recover the legal fees it incurs to enforce the debtor's timely performance under § 365(d), *In re MS Freight Distrib., Inc.*, 172 B.R. at 978–979.

Other courts have disagreed with *MS Freight Distrib.* and the cases on which it relies. They do so on at least three different rationales. *E.g., In re Pudgie's Dev. of N.Y., Inc.*, 202 B.R. 832, 836 (Bankr.S.D.N.Y.1996) (because § 365(d)(3) departs from the standard priority scheme of the Bankruptcy Code, it must be strictly construed; though the meaning of "timely performance" is unambiguous, as applied to rental obligation, it is ambiguous as to tenant's duty to reimburse landlord's attorney fees, and should not be held to mandate payment of claim under lease provision), *In re LCO Enterprises, Inc.*, 180 B.R. 567, 570–571 (9th Cir. BAP 1995), *In re South Bay Medical Assocs.*, 184 B.R. 963, 973 (Bankr.C.D.Cal.1995), and *In re Ryan's Subs, Inc.*, 165 B.R. 465, 468 (Bankr.W.D.Mo.1994) (lease provisions allowing landlord to recover attorney fees from tenant only contemplate actions under state law to enforce the lease's terms in nonbankruptcy forums; because litigation of landlord's rights under federal bankruptcy law is not contemplated by such provisions, landlord has no recoverable claim under lease or

§ 365(d)(3)); *In re Pacific Arts Publishing, Inc.*, 198 B.R. 319, 324 (Bankr. C.D.Cal.1996) (§ 365(d)(3) requires tenant-debtor's obligation to a landlord to arise "from and after the order for relief" in bankruptcy case; obligation to reimburse attorney fees under pre-petition lease does not do so, hence does not give rise to claim that is mandated for payment under § 365(d)(3) or that has administrative-expense priority). *See also, In re Gantos, Inc.*, 181 B.R. 903, 907–908 (Bankr.W.D.Mich.1995).

The problem with most of these cases is that they elide the unmistakable language of the statute, or ignore operative terms of the leases before them. Their tenor usually is that allowing the landlord's recovery of attorney fees under color of § 365(d)(3) offends the broad ethos of bankruptcy administration, as embodied in the general provisions of Title 11.

When these decisions try to build on this ambient and attenuated reaction, however, they stray from the clear Congressional intent. There is no question that § 365(d)(3) creates a constituency whose interests are given heightened protection in early stages of a bankruptcy case. One can disagree with this legislative classification as a political matter, and many have with some justification; however, when language as clear as "all the obligations of the debtor ... under any unexpired lease ..." is invoked by a landlord, the Bankruptcy Court's only appropriate function is to identify those obligations, as set forth in the lease, and then to enforce them in a means appropriate for that stage of the case and the administration of the estate. *In re MS Freight Distrib., Inc.*, 172 B.R. at 979; *In re Pacific Sea Farms, Inc.*, 134 B.R. 11, 14–15 (Bankr. D.Haw.1991).

214 B.R. 366, 368–69.

## INTEREST

■ Merely because Section 365(d)(3) required the trustee to pay postpetition,

prerejection rent to the landlord as it became due, it does not necessarily follow that the failure to make timely payments of rent gave rise to a claim for interest on that account. The Bankruptcy Code provides for the payment of other administrative claimants without calling for the accrual of interest when they are not timely paid. The debtors argued that late charges were all that Norritech could collect under the terms of the lease. Norritech acknowledged that the lease was silent as to interest allowable for unpaid rent and late charges. However, this Court finds that the law of the State of Pennsylvania provides support for Norritech's argument that interest is chargeable on its administrative claim in the instant case.

The Pennsylvania Supreme Court adopted the Restatement of the Law of Contracts, section 337(a), in *Penneys v. Pennsylvania Railroad Co.*, 408 Pa. 276, 183 A.2d 544 (1962), in order to ascertain when interest is recoverable as part of an award for contract damages. *See, also, Somerset Community Hosp. v. Allan B. Mitchell & Associates, Inc.*, 454 Pa.Super. 188, 685 A.2d 141, 148 (1996); *Burkholder v. Cherry*, 414 Pa.Super. 432, 607 A.2d 745, 747 (1992). The Second Restatement of the Law of Contracts, section 354 (formerly known as section 337(a)) states:

> (1) If the breach consists of a failure to pay a definite sum of money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.
>
> (2) In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due.

RESTATEMENT (SECOND) OF CONTRACTS § 354 (1981). Therefore, the court held that interest was recoverable from the date when performance was due where, as here, that performance had a "fixed or ascertainable value." *Id.* In Pennsylvania, the legal rate of interest on judgments is 6% per annum. *Dept. of General Services v. Lhormer Real Estate Agency, Inc.*, 120 Pa.Cmwlth. 604, 549 A.2d 1008 (1988).

From this, the Court concludes that Norritech is entitled to interest on its administrative claim for unpaid postpetition, prerejection rent and late charges, at the legal rate of 6% per annum.

WHEREFORE, the objection of the debtors, Geonex Corporation and Vernon Graphics, Inc., to the administrative claim of Norritech is hereby OVERRULED. Norritech is hereby allowed an administrative claim as follows: all postpetition, prerejection rent due under the lease for the period from February 27, 1995, until June 29, 1995, in the amount of $128,623.62, including late charges; counsel fees and expenses from February 27, 1995, through the present in the total amount of $33,697.58, calculated as of June 8, 2000; and interest at the rate of 6% on unpaid postpetition, prerejection rent and late charges, calculated as of October 31, 2000, in the amount of $43,415.43, for a total administrative claim of $205,736.63.

ORDER ACCORDINGLY.